JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusion that the State Superintendent exceeded her scope of review by making factual determinations, and that the District Court erred by affirming the decision of the State Superintendent.
I dissent from that part of the majority decision which concludes that this case should be remanded to the County Superintendent for further findings of fact and conclusions of law.
After reviewing the issues presented to the County Superintendent, I conclude that her findings were sufficient to explain her conclusion that Elmer R. Baldridge should be reinstated and would, therefore, simply reverse the District Court and order entry of judgment consistent with the County Superintendent’s decision.
The only issue which the County Superintendent was called upon to decide was whether remarks which Baldridge was alleged to have *213 made in the presence of students constituted good cause for his termination pursuant to § 20-4-207, MCA. That section provides that a teacher may be dismissed prior to the expiration of his contract for “immorality, unfitness, incompetence, or violation of the adopted policies of such trustees.”
In this case, the sole basis for allegations that Baldridge acted in a way to support his termination pursuant to that statute were complaints by a group of students that he made inappropriate remarks or gestures in the presence of them and other students. During the course of the hearing, Baldridge either denied making the remarks and gestures, or explained that his remarks were intended to mean something other than they were interpreted to mean by the students who complained. The County Superintendent was basically called upon to resolve conflicting testimony between Baldridge and several complaining students. It is clear from the following findings that those conflicts were resolved in Baldridge’s favor:
7. That the Petitioner was known to be “a thorn in the side” of the district superintendent and the board of trustees because he often challenged the discrimination against Native American students and because he chaired the CEA grievance committee in a number of successful complaints.
8. That the students who testified for the Respondent side seem to be part of a “clique” of friends, two ofwhom are children of school board members. This in addition to the conduct of the daughter of the complaining parents seems to make their testimony somewhat skeptical.
9. That the Petitioner has an excellent reputation as a teacher and has had only one negatory comment on an evaluation which stated that he should be more “tactful in his correspondence with the superintendent.”
It is clear from these findings that the County Superintendent found insufficient credible evidence to find or conclude that there was “good cause” for Baldridge’s termination.
While the findings and conclusions are not as comprehensive as they could be, the points they make are clear: (1) the School Board had an ax to grind with Baldridge; (2) the students who complained about Baldridge were associated with the School Board and were not credible; and (3) Baldridge had no other blemishes on his record which justified his termination.
*214 While the majority is critical of the technical adequacy of the County Superintendent’s findings and conclusions, it should be kept in mind that the hearing process before a county superintendent was never intended to be the equivalent of a trial before a district court. Neither should county superintendents, who are not normally trained in the law, be held to the same standards of draftsmanship that we expect from district judges. The review process by a county superintendent, or in this case, an acting County Superintendent, is simply designed to provide a local, expeditious opportunity for an independent third party to resolve the frequent disputes which can arise between school boards and their employees.
Our concern when reviewing a decision of a county superintendent should simply be whether the factual basis for the decision is clear and supported by the record, and whether the decision is correct or incorrect as a matter of law. After reviewing the record, I conclude that the basis for the County Superintendent’s decision is clear, that her factual findings are not clearly erroneous, and that her decision was not incorrect as a matter of law.
Therefore, I would affirm her decision and remand this case to the District Court for entry of judgment consistent with the County Superintendent’s decision that Baldridge should be reinstated to his position.